## CHARLES L. CROOKHAM *vs.* THE STATE.

### July Term, 1871.

1. The record of the finding of an indictment under the statute for maliciously shooting, stabbing, cutting, &c., is as follows: "An indictment against Charles L. Crookham, malicious stabbing, a true bill," and is held to be sufficient.

2. A count in an indictment under the statute against malicious shooting, &c., in the language of the statute, is held to be sufficient.

3. Under the statute, Code p. 718, sec. 7, the court may discharge the jury when it appears that they cannot agree in a verdict, without the consent of the prisoner.

4. Two witnesses testified that they heard the deceased calling for help, (after dark) and on inquiring of him what was the matter he answered "that somebody was killing him, and was cutting him with a knife," and said that it was the prisoner, naming him; and also answered, the prisoner, naming him, "has stabbed me; he has killed me; for God's sake run for the doctor," and it was not error in the court below to refuse to exclude the words which included the prisoner's name, as the declarations of the deceased were a part of the *res gestæ* and admissible.

5. It was not error to exclude testimony offered by the prisoner, to the effect that another and a different person from himself had made threats to kill the deceased, just before the commission of the offense with which he was charged, and that immediately after the offense such other person left the country and has not since been heard from.

6. A witness is asked if, "after the deceased declared he was dying, and while he was dying, did he make any declaration as to how he received the wounds and by whom they were inflicted; if so, what those declarations were?" To which the answer was, "none except he said that it was hard to die by the hand of another and leave his family." HELD:

    I. It was error to admit such declaration in evidence as part of the *res gestæ* because too remote from the transaction.

    II. It could not be received as a dying declaration, because the death of the deceased is not the subject of the charge, and the circumstances of the death are not the subject of the dying declarations.

---

*Judge Moore had been engaged as counsel in the court below.

7. If a defendant fails to appear according to the terms of his recognizance, he cannot claim a discharge by reason of three regular terms having been allowed to pass without a trial.

This case arose in Mason county. The indictment was found in February, 1869. A trial was had in May, 1869, and the jury failing to agree, were discharged. A further trial was had in September, 1870, and the defendant was found guilty and sentenced to two years confinement in the penitentiary. The first count in the indictment, which was held to be sufficient, is as follows:

"The jurors of the State of West Virginia, in and for the body of the county of Mason, and now attending said court, on their oath present that Charles L. Crookham on the ―――― day of November, 1868, in the said county, in and upon one Samuel Finimore did make an assault, and him, the said Samuel Finimore, feloneously and maliciously did stab, cut, and wound with intent, him, the said Samuel Finimore, then and there to maim, disfigure, disable, and kill, against the peace and dignity of the State of West Virginia."

All other points at issue will be found amply stated in the opinion of Maxwell J.

The defendand brought the case here by writ of error.

*D. Polsley* and *Knight* for the plaintiff in error.

The Attorney General for the State.

MAXWELL J.   Crookham was convicted in the Circuit Court of Mason county, upon a charge of feloniously and maliciously stabbing, cutting and wounding one Samuel Finimore, with intent to maim, disfigure, disable and kill, and was sentenced to the penitentiary for two years, and the case comes here to be reviewed on writ of error. The record shows that the finding of the indictment by the grand jury was entered upon the record of the court, "An indictment against Charles L. Crookham, malicious stabbing: A true bill." There was a motion made to quash the indictment, because there was not a proper entry made of the finding thereof by the grand jury, which motion was overruled, and this is the first ground of error assigned here. It is insisted that the entry should have been upon the record, an indictment for "a felony." If any person maliciously shoot, stab, cut or wound another, with intent to maim, disfigure, disable or kill,

he commits a felony. All malicious stabbings are felonies, but all felonies are not malicious stabbings. The words "malicious stabbings" used in the record of the finding of the indictment much more nearly indicate the character of the offense charged in the indictment than the word "felony" would, so that the court did not err in refusing to quash the indictment for the supposed defect in the record. The second ground of error assigned is that the court erred in refusing to quash the first count in the indictment. The count is in the precise language of the statute and is sufficient. The third and fourth causes of error assigned is that, a former jury had been impanneled to try the accused, which jury was discharged without his consent, and that he could not be tried again on the same indictment. The counsel for the accused, to maintain this assignment of error, cites the case of *Williams* vs. *The Commonwealth* 2 Gratt. 567, in which case it was decided by the general court that, on a trial for a felony the court had no authority to discharge the jury without the consent of the prisoner, merely because the court was of opinion that the jury could not agree. This case was decided at the December term, 1845, of the court, and it cannot be doubted, was decided correctly as the law then was. But the General Assembly of Virginia very soon thereafter passed an act to the effect that, in any criminal case, the court might discharge the jury when it appeared they could not agree in a verdict. The provision is found in our Code p. 718, sec. 7, in these words: "In any criminal case the court may discharge the jury when it appears that they cannot agree in a verdict." The order of the court states that the jury being unable to agree upon a verdict were discharged. Unless the provision of the Code just quoted is to be disregarded the court committed no error in discharging the jury without the consent of the prisoner. The fifth cause assigned as error is the same as the first, in a different form. The eighth ground assigned as error is, in allowing the evidence excepted to by the prisoner, and set out in the second bill of exceptions, to go to the jury as part of the *res gestæ*. The evidence referred to is that of Andrew Ferguson and William Ferguson. Both of these witnesses speak of what occurred at the time, when it is alleged the injury was inflicted upon Finimore by accused.

Andrew Ferguson says he heard Finimore calling for help. The witness says he called to Finimore to know what was the matter. He answered that somebody was killing him, and was cutting him with a knife, and said "it was Charles Crookham." William Ferguson says he heard Finimore calling several times; he asked him what was the matter; he answered that "Charles Crookham has stabbed me, he has killed me, for God's sake run for the doctor." The accused moved the court to exclude from the jury the words "it was Charles Crookham," in the evidence of Andrew Ferguson, and the words "he said Charles Crookham has stabbed me, he has killed me," in the evidence of William Ferguson; but the court overruled the motion and allowed the evidence to go to the jury. These declarations are part of the *res gestæ*, and as such are clearly admissible in the evidence. *Hill's* case, 2 Grattan 594. It is claimed that it was error to refuse the accused to prove that, another and different person from himself had made threats to kill Finimore just before the commission of the offense with which he was charged, and that immediately after the offense such other person left the country and has not since been heard from. So far as appears, this evidence was not pertinent to any inquiry before the jury, and so far as is apparent was properly excluded. The sixth and seventh grounds of error assigned relates to the question asked Mrs. Finimore as to the dying declarations of Finimore, and her answer to that question. Mrs. Finimore after giving evidence which was not objected to and which was not objectionable, in which she states that her husband was dead, and that she had had a conversation with him just before his death, when he was conscious he was dying, was asked by the attorney for the State, the following question: After Samuel Finimore declared he was dying, and while dying, did he make any declaration as to how he received the wounds and by whom they were inflicted; if so, state what those declarations were? To which question the witness made answer: None except he said to his sister that it was hard to die by the hand of another and leave his family. This declaration could not be admitted in evidence as part of the *res gestæ* because too remote from the transaction. It could not be received as a dying declaration because the death of the deceased is not

the subject of the charge, and the circumstances of the death are not the subject of the dying declarations. 1 Greanleaf on Ev. sec. 156; *Wilson* vs. *Boesem,* 15 Johnson 286; *The King* vs. *Mead,* 9 Eng. Com. Law 196. The court committed an error in refusing to exclude the evidence of the declarations. It is not easy to see any effect the evidence could have had on the jury, but as it may have had some influence the judgment will have to be reversed. It is claimed for the accused that he is entitled to be discharged, because three regular terms of the court were allowed to pass without a trial. The terms are alleged to be the September term, 1869, and February and May terms, 1870. It appears from the record that at the September term, 1869, the defendant appeared in court and entered into recognizance to appear at the then next term of the court. At the February and May terms, 1870, of said court, the accused failed to appear in discharge of his recognizance, so far as appears from the record. One of the conditions to entitle him to his discharge is that he shall not take advantage of his failing to appear according to his recognizance. The accused is not entitled to be discharged and the cause will have to be remanded for a new trial to be had.

Berkshire P. concurred.

JUDGMENT REVERSED, AND CASE REMANDED.