IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0776
_____

FILED
**November 5, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

v.

PAUL C.,
Petitioner

_____

Appeal from the Circuit Court of Preston County
The Honorable Steven L. Shaffer, Judge
Criminal Action No. 17-F-32 and 19-F-2

AFFIRMED

_____

Submitted: October 14, 2020
Filed:  November 5, 2020

Lisa Hyre, Esq.
Public Defender Corporation
for the 18th Judicial Circuit
Kingwood, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
West Virginia Attorney General
Holly M. Flanigan, Esq.
Assistant Attorney General
Counsel for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.     "'This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*.  However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.' Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009)."  Syl. Pt. 1, *State v. Holden*, -- W. Va. --, 843 S.E.2d 527 (2020).

2.     "'The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution.  U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14.' Syl. Pt. 1, *State v. Foddrell*, 171 W. Va. 54, 297 S.E.2d 829 (1982)."  Syl. Pt. 3, *State v. Holden*, -- W. Va. --, 843 S.E.2d 527 (2020).

3.     "It is the three-term rule, W.Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution."  Syl. Pt. 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986).

4.     "'Pursuant to W.Va.Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction,

i

if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute.' Syllabus, *State v. Carter*, 204 W.Va. 491, 513 S.E.2d 718 (1998)." Syl. Pt. 1, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002).

5. "'Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended.' Syl. pt. 2, *State ex rel. Spadafore v. Fox*, 155 W.Va. 674, 186 S.E.2d 833 (1972)." Syl. Pt. 3, *State v. Fender*, 165 W. Va. 440, 268 S.E.2d 120 (1980).

**HUTCHISON, Justice**:

Petitioner Paul C.[1] appeals from an order of the Circuit Court of Preston County that denied his motion to dismiss an indictment that alleged eighteen felony sexual offenses against him involving two minors. Petitioner asserts that three unexcused terms of court have passed without a trial and that, pursuant to West Virginia Code § 62-3-21 (1959), he must be forever discharged from prosecution for the crimes charged. Upon careful consideration of the parties' briefs and oral arguments, the appendix record, and the pertinent legal authority, we find that the three-term rule was not violated and affirm the circuit court's order.

### I. Factual and Procedural Background

Petitioner was originally indicted on fourteen felony sexual offenses including six counts of third-degree sexual assault, *see* W. Va. Code § 61-8B-5(a)(2), and eight counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust, *see* W. Va. Code § 61-8D-5(a), for crimes allegedly occurring between March and

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using a defendant's first name and last initial and initials to refer to the minor victims. *See e.g.,* W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

August of 2016. Petitioner was then twenty-three or twenty-four years old, while the two female victims, R.T. and H.A., were between the ages of thirteen and fourteen years old.

An investigation report prepared by the Preston County Sheriff's Department indicated that R.T. was taken for a medical examination after disclosing to her mother that she had been sexually assaulted by petitioner, who is married to the mother's niece. R.T. reported that the alleged abuse occurred during a period in which petitioner and his wife were staying at R.T.'s residence. According to R.T., petitioner repeatedly asked and pressured R.T. for sex and that she eventually gave into his requests, the revelation of which was precipitated by R.T.'s fear of pregnancy. R.T.'s friend, H.A., made similar allegations against petitioner. Further, the State alleged that petitioner was grooming H.A. by buying her food. Petitioner was arrested on October 7, 2016.

The terms of the Circuit Court of Preston County commence on the first Tuesday in March, the first Tuesday in June, and the third Tuesday in October. *See* W. Va. Trial Ct. R. 2.18. Petitioner claims that because three regular terms of court passed without a trial – specifically, the June and October 2017 terms and the March 2018 term – he is entitled to be forever discharged from prosecution for the offenses charged in the indictment, pursuant to West Virginia Code § 62-3-21. Though this case involves a protracted procedural history, we recount only that which is relevant (and gives context) to the resolution of the narrow issue on appeal.

2

The March 2017 term of court began on March 7, 2017. Petitioner was indicted on March 7, 2017, and trial was scheduled for May 2, 2017. On April 25, 2017, petitioner filed an omnibus discovery motion that included at least thirty-four discovery requests. On April 28, 2017, petitioner filed a motion for the medical and mental health records of the alleged victims. Petitioner filed a motion to postpone the trial on the scheduled trial date of May 2, 2017. By order entered on May 8, 2017, the circuit court granted petitioner's motion and noted that it would reset the trial date at a June 9, 2017, hearing, during the next term of court, at which it would also consider pre-trial motions.

The June 2017 term of court began on June 6, 2017. At the scheduled June 9, 2017, hearing, the circuit court, based upon the proffer of counsel regarding the alleged victims' medical and mental health records, determined that a guardian ad litem ("guardian") should be appointed and, by subsequent order, appointed Natalie J. Sal. In an order entered on July 13, 2017, the circuit court rescheduled the trial for August 29, 2017, and made rulings on petitioner's pretrial motions.

On August 24, 2017, the State filed a motion to continue the trial that was scheduled for August 29, 2017, on the ground that "in preparing for trial . . . and after discussion with the [guardian] . . . [the State] has been informed that the two alleged child victims are undergoing counseling but are not yet ready to testify and need more counseling before they would be able to testify." By order entered on August 28, 2017, the circuit court granted the State's motion to postpone the trial, "noting counsel for the Defendant

3

does not object." The court rescheduled the trial for January 2, 2018, continuing it to the next term of court.

Meanwhile, on September 19, 2017, the State filed a motion to allow the alleged child victims to testify at trial by live, two-way closed-circuit video, pursuant to West Virginia Code § 62-6B-4,[2] "to avoid psychological trauma from having to confront the Defendant in person at a trial." The circuit court ordered that a hearing on the State's motion be conducted on November 9, 2017.

The October 2017 term of court began on October 17, 2017. By order entered on November 9, 2017, the circuit court ordered that the confidential medical and psychological and/or psychiatric records of R.T. and H.A. from February of 2016 to the present, and on a continuing basis through the six months following the date of entry of the court's order, be provided to the court and guardian for in-camera review. The circuit court found that, pursuant to *State v. Roy*, 194 W. Va., 276, 460 S.E.2d 277 (1995),[3] it should review such records to determine if they "are sufficiently relevant to the determination of

---

[2] West Virginia Code § 62-6B-4, inter alia, sets forth the procedures for taking testimony of child witnesses by live, two-way closed-circuit testimony.

[3] In *Roy*, upon consideration of a discovery request for confidential counseling records of a juvenile victim, this Court held that if an accused can show the relevance of such statutorily protected records, they may be discovered and used to impeach a prosecuting witness's credibility.

the issues before the [c]ourt to outweigh the confidentiality requirements of W. Va. Code

§ 49-7-1."[4]

On November 27, 2017, the circuit court appointed a psychologist to

interview R.T. and H.A. for the purpose of determining whether they should be permitted

to testify via closed-circuit video and ordered that a report thereon be provided to the court

as soon as possible, as required by West Virginia Code § 62-6B-3(d).[5]  *See State v. David*

*K.*, 238 W. Va. 33, 41, 792 S.E.2d 44, 52 (2016) (discussing the constitutional

underpinnings and legislative purpose of West Virginia Code § 62-6B-1, *et seq.*, entitled

---

[4] West Virginia Code § 49-7-1 was recodified as § 49-5-101 by Acts 2015, c. 46, eff. May 17, 2015, and subsequently amended by Acts 2016, c. 33, eff. June 10, 2016.

[5] West Virginia Code § 62-6B-3(d) provides:

> (d) In determining whether to allow a child witness to testify through live, closed-circuit television the court shall appoint a psychiatrist or a licensed psychologist with at least five years clinical experience who shall serve as an advisor or friend of the court to provide the court with an expert opinion as to whether, to a reasonable degree of professional certainty, the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the psychiatrist or licensed psychologist shall be filed with the circuit court at least thirty days prior to the final hearing on the use of live, closed-circuit television and the defendant shall be allowed to review the opinion and present evidence on the issue by the use of an expert or experts or otherwise.

"Protection and Preservation of Statements and Testimony of Child Witnesses," and the procedural safeguards therein so as to "accomplish the twin goals of protecting child victims when justice so requires and ensuring the constitutional right of a defendant to confront his/her accuser[.]") An order substituting the evaluating psychologist was entered on December 18, 2017.

On December 29, 2017, the State and the guardian moved to continue the January 2, 2018, trial on the ground that the psychological evaluations that were previously ordered for the purpose of determining whether the alleged child victims should be permitted to testify by closed-circuit video had not yet been conducted. Noting that "the process for this evaluation would likely take longer than the date for [i.e., would not be concluded by] the scheduled jury trial[,]" the circuit court found that a continuance was warranted. *See* W. Va. Code § 62-6B-3(d) (providing that the evaluator's opinion must be filed at least thirty days before the final hearing on the use of closed-circuit video and that "the defendant shall be allowed to review the opinion and present evidence on the issue by the use of an expert or experts or otherwise"). By order entered on December 29, 2017, the circuit court continued petitioner's trial to April 3, 2018, into the next term of court, with no objection by petitioner noted.

On February 22, 2018, the circuit court received the forensic evaluations of R.T. and H.A. by the court-appointed psychologist, Dr. Edward Baker, and ordered that they be filed under seal. By order entered February 23, 2018, the court ordered that a

hearing on the State's motion to allow R.T. and H.A. to testify at petitioner's trial by closed-circuit video be held on March 29, 2018.

The March 2018 term of court began on March 6, 2018. A motions hearing was conducted on March 29, 2018, at which the circuit court considered petitioner's motion regarding the disclosure of "any and all evidence pursuant to Rule 16 of the West Virginia Rules of Criminal Procedure" and renewed motion for the alleged victims' medical and mental health records. With regard to the motion to allow R.T. and H.A. to testify at trial by closed-circuit video, petitioner moved to postpone the court's consideration of that motion in order to allow counsel for petitioner sufficient time to review the alleged victims' psychological records, which the circuit court had only just released to the parties following the court's in-camera review of the same. The circuit court scheduled a new trial date for May 15, 2018 (within the March 2018 term), with the understanding that "intervening circumstances" involving the court's busy docket –including the fact that the court had two other trials set for that date – might warrant another postponement.[6]

By order entered on April 6, 2018, the circuit court ordered that a hearing be conducted on April 23, 2018, regarding petitioner's request to review the alleged victims' psychological records and their possible use at trial and on the State's motion to allow the

---

[6] The circuit court and the parties referenced the fact that there were "trials starting next Tuesday for about the next seven weeks in a row."

7

alleged victims to testify by closed-circuit video. The court also set a pretrial conference for May 10, 2018.

The hearing scheduled for April 23, 2018, was held on May 10, 2018.[7] During the course of that hearing, it became clear that the case would not be ready for trial on May 15. Among other things, petitioner's counsel advised the court that she had "several more motions now, based on some of this stuff [i.e., issues discussed during the hearing]," including a motion to prohibit the evaluating psychologist, Dr. Baker, from testifying at trial. The court then observed, "Well, this case is not ready for trial for Tuesday. I think that's – as [petitioner's counsel] just indicated, she has some motions and things that she needs to file, and I suspect that's true." Petitioner's counsel responded, "[v]ery well, sir," to the court's observation. The State suggested a new trial date of August 14, 2018, during the next term of court, to which petitioner's counsel agreed, stating "[t]hat's fine with us." However, the court secretary, who was present at the hearing, advised the court and the parties that there were "two other cases right now, set for August 14th[,]" to which the court remarked, "Well, I won't be – I won't be the judge on that time [sic], so we'll have to see if [the newly elected judge] can do it. . . . [W]e'll see what

---

[7] This hearing was apparently rescheduled due to the retirement of then-presiding Judge Lawrance S. Miller, Jr., Judge Miller's subsequent appointment as a senior status judge to the case, Judge Miller's resignation as a senior status judge, and the appointment of Senior Status Judge Larry V. Starcher, all occurring up to and pending the May 2018 judicial election. Judge Steven L. Shaffer was elected on May 8, 2018, was sworn into office on May 18, 2018, and began presiding over cases, including this case, on May 29, 2018.

happens with it. The new judge may juggle up the schedule in ways that none of us know about right now." *See* n.7. As for the State's motion to allow the alleged victims to testify by closed-circuit video, the circuit court took the motion under advisement.

The June 2018 term of court began on June 5, 2018. By order entered on July 9, 2018, based upon Dr. Baker's evaluations, the circuit court granted the State's motion to allow R.T. and H.A. to testify by closed-circuit video. Thereafter, the parties filed numerous substantive motions. During the August 9, 2018, pretrial hearing, counsel for petitioner moved for a continuance, which the circuit court granted.

On August 16, 2018, the State moved to dismiss the indictment, without prejudice, on the ground that, "[i]n preparing this case for trial[,] the State now alleges that additional crimes have been committed by the Defendant that have not been previously charged herein." The State asserted that, in the interest of justice and judicial efficiency, all charges should be prosecuted "in one indictment and through one trial, for purposes of a clean record and the inter related [sic] nature of the crimes alleged." Over petitioner's objections, the circuit court granted the State's motion to dismiss the indictment, without prejudice, by order entered on August 16, 2018.[8]

---

[8] In a prior order entered on August 3, 2018, the circuit court granted the State's motion to dismiss Counts 13 and 14 of the indictment based upon the State's representation that it did not have sufficient evidence to proceed to trial on these charges.

The October 2018 term of court began on October 16, 2018. Petitioner had been recharged on August 16, 2018, in the Magistrate Court of Preston County and was subsequently indicted on January 5, 2019, on eighteen felony sex offenses including nine counts of third-degree sexual assault and nine counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust, all involving the minor victims H.A. and R.T. Eight of the charges in this indictment were new charges that had not been included in the original indictment. Petitioner was arraigned on January 15, 2019.

On February 5, 2019, the State filed a motion to set trial within the October 2018 term of court, which term would end on March 4, 2019. The circuit court denied the motion due to its congested docket, noting that it had no time available for a trial between the February 5, 2019, filing of the motion, and the end of the October 2018 term of court on March 4, 2019.

Petitioner filed a motion to dismiss the indictment on February 15, 2019, on the ground that his right to be tried within three regular terms of court, pursuant to West Virginia Code § 63-2-21, had been violated.

The March 2019 term of court began on March 5, 2019. A hearing on petitioner's motion to dismiss was conducted on March 21, 2019, after which the circuit court took the matter under advisement. At a subsequent hearing on April 15, 2019, the court advised the parties that the motion to dismiss would be denied and set trial for May 7, 2019. The court memorialized its ruling in an order entered on April 22, 2019.

10

On May 2, 2019, petitioner filed a petition for a writ of prohibition with this Court, which was refused by order entered on May 6, 2019. On May 8, 2019, petitioner entered an *Alford/Kennedy* plea[9] to two counts of third-degree sexual assault (counts one and seven of the indictment) and one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust (count eight). As a condition of the plea, petitioner reserved the right to challenge his convictions based upon a violation of the three-term rule. Petitioner now appeals.

## II. Standard of Review

We review the circuit court's order denying petitioner's motion to dismiss the indictment under the following standard:

> "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo.* However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact." Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

Syl. Pt. 1, *State v. Holden*, -- W. Va. --, 843 S.E.2d 527 (2020).

---

[9] An *Alford* plea, from the decision in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), allows a defendant to enter a guilty plea without admitting guilt. *See* Syl. Pt. 1, *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987) (stating that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").

11

### III. Discussion

Petitioner's sole assignment of error is that West Virginia Code § 62-3-21 entitles him to be forever discharged from prosecution for the crimes alleged in the indictment because three regular terms of court following the term in which he was indicted passed without a trial.[10] It is well established that "'[t]he right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution. U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14.'" *Holden*, -- W.Va. at --, 843 S.E.2d at 529, syl. pt. 3 (quoting Syl. Pt. 1, *State v. Foddrell,* 171 W. Va. 54, 297 S.E.2d 829 (1982)). Further, this Court has declared that

---

[10] Petitioner's assignment of error recognizes that "[w]hen counting terms for purposes of the three-term rule, the term in which the defendant is indicted is not counted as one of the three terms." *State v. Carrico*, 189 W. Va. 40, 44, 427 S.E.2d 474, 478 (1993). As we held in syllabus point four of *Carrico*,

> "[t]he three regular terms of a court essential to the right of a defendant to be discharged from further prosecution, pursuant to provisions of the *Code,* 62–3–21, as amended, are regular terms occuring [*sic*] subsequent to the ending of the term at which the indictment against him is found. The term at which the indictment is returned is not to be counted in favor of the discharge of a defendant." Syl. pt. 1, *State ex rel. Smith v. DeBerry,* 146 W.Va. 534, 120 S.E.2d 504 (1961) [*overruled on other grounds State ex rel. Sutton v. Keadle*, 176 W. Va. 138, 342 S.E.2d 103 (1985)].

189 W. Va. at 42, 427 S.E.2d at 476. In petitioner's case, the indictment against him was returned during the March 2017 term of court. Therefore, although this term passed without a trial, it is not counted in petitioner's favor for purposes of determining whether the three-term rule has been violated.

12

"[i]t is the three-term rule, W.Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." Syl. Pt. 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986). West Virginia Code § 62-3-21 provides:

> Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace, city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

As we held in syllabus point one of *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002),

> "[p]ursuant to W. Va.Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute." Syllabus, *State v. Carter,* 204 W. Va. 491, 513 S.E.2d 718 (1998).

13

Petitioner contends that the State's failure to try him within three regular terms of court must be "caused by one of the exceptions enumerated in the statute." *Id.* Otherwise, he must be "forever discharged from prosecution" for the offenses alleged in the indictment. *Id.* He argues that the June 2017, October 2017, and March 2018 terms of court passed without a trial[11] and that none of the exceptions enumerated in West Virginia Code § 62-3-21 apply – that is, the trial delay was not caused by petitioner's insanity; by the State's witnesses "being enticed or kept away, or prevented from attending by sickness or inevitable accident"; by petitioner's motion for a continuance; because petitioner escaped from jail or failure to appear; or by the jury's failure to reach a verdict. *Id.* Petitioner argues that, rather, the June and October 2017 terms and the March 2018 term passed as a direct result of the State's failure to diligently prepare for trial and that he neither caused nor contributed to the delays.

In reviewing the three terms of court at issue, we need look no further than the March 2018 term of court, which we easily conclude was excused and, if we assume that the remaining two terms (the June and October 2017 terms) were unexcused, is

---

[11] As previously noted, petitioner acknowledges that the March 2017 term of court, the term in which he was indicted, does not count as an unexcused term for purposes of the three-term rule. *See* n.9, *supra.* Further, petitioner does not contend that either the October 2018 term, in which he filed his motion to dismiss the indictment, or March 2019 term, in which the circuit court held a hearing on the motion, denied the motion, and petitioner entered into a plea agreement, count towards a three-term rule violation. Thus, with regard to the October 2018 and March 2019 terms, petitioner implicitly acknowledges that "even though [he] did not make a formal motion for a continuance . . ., if he were a moving party in a proceeding which necessitated such continuance, such term should not be counted." *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 679, 186 S.E.2d 833, 836 (1972).

14

determinative that the three-term rule was not violated.  At the May 10, 2018, hearing that was held five days before the scheduled trial, the circuit court candidly assessed the posture of the case and declared that the matter was not ready for trial.  Specifically, petitioner's counsel informed the court that she had "several more motions" to file based upon issues that were discussed during that hearing, to which the circuit court responded, "Well, this case is not ready for trial for Tuesday. . . . [petitioner's counsel] has some motions and things that she needs to file and I suspect that's true."  Petitioner's counsel agreed with the court's assessment. The State suggested a new trial date of August 14, 2018, during the next term of court, to which petitioner's counsel also agreed, along with the acknowledgment that the recent election of a new judge and the court's busy docket might postpone the trial even further.  This Court has held that

> "[a]ny term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62-3-21, as amended." Syl. pt. 2, *State ex rel. Spadafore v. Fox*, 155 W.Va. 674, 186 S.E.2d 833 (1972).

Syl. Pt. 3, *State v. Fender*, 165 W. Va. 440, 268 S.E.2d 120 (1980).  Petitioner did not make a formal motion to continue.  However, based upon the timing (five days before trial) and the nature of at least one of the identified motions he intended to file (to prohibit the trial testimony of the evaluating psychologist), petitioner made it clear that a continuance was warranted, and a continuance was agreed upon.

> "We do not think that the language used in the statute, 'on motion of the accused,' means that the accused party must

make a formal motion in the court in which the indictment is pending in order to charge him with the delay in bringing him to trial. If he instigates a proceeding which forces a continuance of the case at a particular term of court, he will not be permitted to take advantage of the delay thus occasioned."

*State ex rel. Farley v. Kramer*, 153 W. Va. 159, 172–73, 169 S.E.2d 106, 114–15 (1969) *cert. denied* 396 U.S. 986 (1969) (internal citation omitted). Given these facts, it is clear that the March 2018 term was an excused term for purposes of the three-term rule. Even if the June and October 2017 terms were unexcused,[12] because the March 2018 term was excused, we conclude that three unexcused terms of court did not pass without a trial and petitioner's right to be tried without unreasonable delay, pursuant to West Virginia Code §62-3-21, was not violated.[13]

## IV. Conclusion

For the foregoing reasons, the circuit court's April 22, 2019, order denying petitioner's motion to dismiss the indictment is hereby affirmed.

Affirmed.

---

[12] It is not necessary that we determine whether the June and/or October 2017 terms of court were unexcused in order to resolve the question of whether the three-term rule was violated in this case.

[13] We observe that the State was "entitled to reindict after a *nolle prosequi* if the prosecution can conduct the trial within the constraints of the three-term rule." *Carrico*, 189 W. Va. at 45, 427 S.E.2d at 479. Having determined that three unexcused terms had not passed without a trial prior to the dismissal of the original indictment, the State was entitled to reindict petitioner.

16